# UNITED STATES of America, Plaintiff–Appellee,

v.

## Frederick James STAVES, Defendant–Appellant.

### United States of America, Plaintiff–Appellee,

v.

### Ernest Wayne, Defendant–Appellant.

Nos. 03–50300, 03–50470.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2004.

Filed Sept. 9, 2004.

---

William S. Harris, South Pasadena, CA, for the defendants-appellants. Judith Rochlin, Los Angeles, CA, was on the brief for defendant-appellant Wayne.

Timothy J. Searight, Assistant U.S. Attorney, Los Angeles, CA, for the plaintiff-appellee. With him on the briefs was Tracy L. Wilkison, Assistant U.S. Attorney, Los Angeles, CA.

Before B. FLETCHER, HANSEN,[*] and RAWLINSON, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

Defendants–Appellants Frederick James Staves ("Staves") and Ernest Wayne ("Wayne"),[1] who conditionally pled guilty to federal drug trafficking offenses, appeal the denial of their motions to suppress evidence obtained through wiretapping. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

These appeals arise out of a lengthy investigation by the federal Drug Enforcement Agency (DEA) and other law enforcement agencies of a large-scale cocaine trafficking operation affiliated with the "Santana Block Crips" in Compton, California. Investigators believe that Staves was the leader of the gang and the drug trafficking operation.

Police arrested Wayne on February 1, 2001, after intercepted telephone conversations and investigators' surveillance of a suspected drug "stash house" led police to believe that a drug transaction had occurred. A kilogram of cocaine was found in the trunk of the vehicle in which Wayne left the house. Staves was arrested on September 6, 2001, after a warrant was issued for his arrest. A grand jury returned a 34–count indictment against Staves, Wayne, and 24 other people for various drug-trafficking related offenses.

Staves filed a motion to suppress evidence obtained from the interception of communications from several telephone lines used by Staves, or in the alternative to order a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). District Judge Audrey Collins issued the order authorizing the first wiretap on July 11, 2000. After District Judge Stephen V. Wilson denied the motion to suppress, Staves filed a "renewed" motion to suppress wiretap evidence or to order a *Franks* hearing, which

---

[*] Honorable David R. Hansen, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. These appeals were consolidated with Ronald Hamilton's appeal. Hamilton's appeal will be addressed in a separate disposition.

the district court orally denied. Wayne joined both motions.

Staves and Wayne then conditionally pled guilty, respectively, to conspiracy to possess and distribute more than five kilograms of cocaine and possession with intent to distribute more than 500 grams of narcotics. Both Staves and Wayne reserved the right to appeal the denial of the motions to suppress. The district court sentenced Staves to 240 months in prison, followed by a ten-year term of supervised release. It sentenced Wayne to 188 months in prison, with four years of supervised release. Staves and Wayne timely filed appeals to this court.

## II. STANDARD OF REVIEW

We review de novo whether an application for a wiretap order is supported by a full and complete statement of the facts in compliance with 18 U.S.C. § 2518(1)(c). *United States v. Blackmon,* 273 F.3d 1204, 1207 (9th Cir.2001). If it was, we review the issuing judge's decision that the wiretap was necessary for an abuse of discretion. *Id.* We review the district court's denial of a *Franks* hearing de novo, and we review underlying factual findings for clear error. *United States v. Shryock,* 342 F.3d 948, 975 (9th Cir.2003).

## III. DISCUSSION

A. *First Motion to Suppress*

1. *Necessity*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, prohibits electronic surveillance of criminal suspects unless law enforcement officials comply with specified privacy safeguards. Of relevance to this appeal, the wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c). The issuing judge must determine whether there is probable cause and if the wiretap is necessary because normal investigative procedures, employed in good faith, have failed, would likely be ineffective, or are too dangerous. *Id.* § 2518(3)(c); *Shryock,* 342 F.3d at 975.

Staves argues [2] that the wiretap application did not demonstrate necessity for a wiretap. Staves contends that investigators could have infiltrated his drug trafficking conspiracy by providing confidential informant one ("CS1") with "cloned" or "burnout" cellular telephones [3] to sell to Staves for use in the conspiracy, which investigators could have monitored. Although Title III applies to cellular telephones, *Bartnicki v. Vopper,* 532 U.S. 514, 524, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001), Staves argues that Title III does not require a court order to record conversations on cloned cellphones because use of an illegal cellphone constitutes consent to its monitoring. Although CS1 was in prison at the time the wiretap was authorized, Staves argues that investigators could

---

**2.** Wayne joins Staves's argument in full, so all discussion of Staves's argument applies to Wayne as well. For simplicity, much of the discussion refers only to Staves.

**3.** Cloned cellphones are programmed to use the telephone number of an existing account, operating much like an extension of a traditional telephone line. *See United States v. Cabrera,* 172 F.3d 1287, 1289 n. 1 (11th Cir. 1999). Burnout cellphones are stolen cellphones, which are used until the existing user closes her account. Both are difficult to trace because calls are recorded to the original account. Because the analysis is the same for cloned and burnout cellular telephones, hereafter we use "cloned cellphones" to refer to both.

have released or furloughed him to cooperate.

Although it appears that no court has addressed squarely the legality of monitoring cloned cellphones without a court order, we have applied Title III's requirements to a court order authorizing monitoring of cloned cellphones. *See United States v. Hermanek*, 289 F.3d 1076, 1087 (9th Cir.2002) (stating that the statute permits "roving wiretaps," which are "an appropriate tool to investigate individuals ... who use cloned cellular phone numbers ... to avoid detection"); *see also United States v. Nelson–Rodriguez*, 319 F.3d 12, 32–33 (1st Cir.2003) (applying Title III's necessity requirement where investigators obtained a wiretap order for a cloned cellphone).

 Title III permits interception of a conversation if "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(C). Generally, consent must be express, but consent may be implied where there are "surrounding circumstances indicating that the defendant knowingly agreed to the surveillance." *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (quoting *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987)) (brackets and internal quotation marks omitted). Staves argues that use of a cloned cellphone constitutes consent to its monitoring because monitoring is a foreseeable harm of using an illegal cellphone. Assuming *arguendo* that this is true, foreseeability of monitoring is insufficient to infer consent. Rather, the circumstances must indicate that a party to the communication knew that interception was likely and agreed to the monitoring. *See Van Poyck*, 77 F.3d at 292 (inferring knowing agreement to monitoring of prison telephone conversations where the defendant received several warnings of the monitoring).

The "necessity requirement exists in order to limit the use of wiretaps." *United States v. Bennett*, 219 F.3d 1117, 1121 (9th Cir.2000) (internal quotation marks omitted) (quoting *United States v. Commito*, 918 F.2d 95, 98 (9th Cir.1990)). "Congress was concerned lest overzealous law enforcement officers rely excessively upon such techniques in lieu of less intrusive investigative procedures." *United States v. King*, 478 F.2d 494, 503 (9th Cir.1973). Therefore, Title III was enacted to address the "grave threat to the privacy of every American that is posed by modern techniques of electronic surveillance." *Id.* (citation omitted). Title III protects a privacy right to be free of intrusive monitoring by law enforcement officials, balancing that right with legitimate law enforcement needs. Permitting wiretapping of cloned cellphones without a court order would undermine Title III's protections because law enforcement officials could supply informants with monitored, cloned cellphones rather than undertaking the preliminary investigation and providing the detailed application required to receive a wiretap order.

Accordingly, we conclude that Title III prohibits monitoring cloned cellphones without a court order. Because Staves's proposed investigative technique is illegal, the omission of the strategy from the wiretap application does not render the wiretap application incomplete or detract from the finding of necessity.

 Agent Waldeck's 49–page affidavit provides a thorough and convincing explanation of the need for wiretap evidence to uncover the full scope of the conspiracy. Before applying for a wiretap order, investigators obtained information from confidential informants and admitted gang members; recorded telephone conversations between Staves and a confidential informant with the informant's consent; conducted a controlled purchase of cocaine;

conducted surveillance of Staves's residence, pager business, and stash house; obtained pen registers and "trap and trace devices," which indicated an inordinately large volume of calls made and received; and investigated Staves's finances and tax records for evidence of money laundering. Nonetheless, investigators were unable to uncover the full scope of the conspiracy with traditional investigative techniques because the organization used sophisticated counter-surveillance strategies; trash searches were impossible because trash was not left where police could retrieve it at any of the locations under surveillance; CS1 was in prison and unavailable to assist; confidential informant two was unwilling to cooperate further; introducing an undercover agent likely would have been dangerous or impossible because Staves would have been suspicious of anyone new; toll analysis of telephone calls was of limited use; and warrants to search the locations under surveillance likely would not reveal the full scope of the conspiracy. Therefore, Waldeck concluded that wiretap evidence was necessary to obtain direct evidence of the entire scope of the conspiracy.

Investigators conducted a lengthy and thorough investigation before applying for a wiretap order. Law enforcement officials need not exhaust every conceivable investigative technique before seeking a wiretap order. *United States v. McGuire*, 307 F.3d 1192, 1196–97 (9th Cir.2002); *Bennett*, 219 F.3d at 1122. We conclude that the wiretap application contains a full and complete statement in compliance with 18 U.S.C. § 2518(1)(c), and the issuing judge did not abuse her discretion in concluding that the wiretap was necessary.

### 2. *Franks Hearing*

■ A defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was deliberately or recklessly included in an affidavit submitted in support of a wiretap order, and the false statement was material to the district court's finding of necessity. *Bennett*, 219 F.3d at 1124. False statements are material if the wiretap application purged of the false statements would not support findings of probable cause and necessity. *Bennett*, 219 F.3d at 1124; *United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir.1985).

■■ Staves's first motion to suppress requested a *Franks* hearing to test the statement that CS1 was unavailable to cooperate in the investigation and because the wiretapping application omitted his cloned cellphone strategy. With respect to CS1's availability, Staves did not allege that CS1 was not in prison, but rather argued that the DEA could have arranged CS1's furlough or release for cooperation. Because the necessity requirement does not "mandate[ ] that the government organize the release of jailed informants before a wiretap will be authorized," *United States v. Canales Gomez*, 358 F.3d 1221, 1226 (9th Cir.2004), the affidavit's statement that CS1 was unavailable because he was in prison is not false or misleading. The wiretap application's omission of Staves's creative but illegal investigative strategy is not a false statement for *Franks* purposes because the omission is not misleading. *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985) (holding that "deliberate or reckless omissions of facts that tend to mislead" are false statements for *Franks* purposes). Because the motion to suppress does not identify any false statement in the wiretap affidavit, the district court properly denied a *Franks* hearing.

### B. *"Renewed" Motion to Suppress Wiretap Evidence*

■ Staves's second motion to suppress, with a request for a *Franks* hearing, argues that Staves discovered the identity of

CS1 and that person "was not privy to the details of Staves's narcotics trafficking activities." Therefore, Staves argues that CS1 lied to investigators and his lies were incorporated into the wiretap affidavit. Staves argues that the wiretap application purged of the false information does not support a finding of probable cause. Because the renewed motion challenges the truth of information in the wiretap application, a *Franks* hearing ordinarily would be necessary for Staves to prove his allegations, so we turn to whether the district court erred in denying a *Franks* hearing on the second motion to suppress.

■ The motion does not allege that the affiant, Agent Waldeck, acted deliberately or recklessly in incorporating any false information into the affidavit. A *Franks* motion must challenge the veracity of the affiant. *See United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir.1986) (stating that "under *Franks* . . . the veracity of only the affiant must be challenged"); *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir.1983) ("The offer of proof [for a *Franks* hearing] must challenge the veracity of the affiant, not that of his informant."). Allegations that the affiant negligently or innocently included false information are insufficient to require a *Franks* hearing. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. Because Staves did not identify any false statement deliberately or recklessly included in the wiretap application, we conclude that the district court properly denied a *Franks* hearing on the renewed motion.[4]

## IV. CONCLUSION

The wiretap application contains a full and complete statement of the facts sup-

porting the wiretap application, and the issuing judge did not abuse her discretion in concluding that a wiretap order was necessary to uncover the full scope of the drug trafficking conspiracy. The district court properly denied *Franks* hearings on the motions to suppress. Accordingly, the district court's denial of Staves's and Wayne's motions to suppress wiretap evidence is

**AFFIRMED.**

---

4. Moreover, the wiretap application purged of the allegedly false statements from CS1 supports findings of probable cause and necessity. As described above, the law enforcement officials conducted an extensive investigation before applying for a wiretap order. Much of the information from CS1 to which Staves objects was confirmed by another confidential informant.