**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

JEREMY EUGENE STAFFELDT;
ORLANDO LEON PASTRANO; LINCOLN
CLARENCE METZGAR; JOHN
ANTHONY GONZALES,
        *Defendants-Appellees.*

No. 05-10243

D.C. No.
CR-03-01294-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
March 13, 2006—San Francisco, California

Filed June 26, 2006

Before: Stephen Reinhardt, John T. Noonan, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Paul K. Charlton, United States Attorney, John Joseph Tuchi, Deputy Appellate Chief, Keith E. Vercauteren, Assistant United States Attorney, Phoenix, Arizona, for the appellant.

Cameron A. Morgan, Scottsdale, Arizona, for the appellees.

## OPINION

REINHARDT, Circuit Judge:

The United States appeals an order of the district court granting a motion to suppress evidence obtained by means of a wiretap of two cellular phones belonging to Jeremy Staffeldt, one of the defendants. The district court found that the wiretap application was "facially insufficient," one of the three grounds for suppressing evidence under the statute governing the authorization of wiretaps, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Act"). The application, which sought an order to wiretap Staffeldt's phones, included as an exhibit a memorandum of authorization from the Department of Justice ("DOJ" or "Justice Department") that purportedly showed that the request to submit the application to wiretap Staffeldt had been approved by a properly authorized DOJ official, as required by the Act. Unfortunately, however, the memorandum of authorization did no such thing. Instead, it pertained to an entirely unrelated wiretap. It authorized the submission of an application for a wiretap of a different person, with a different phone number, address, cell phone issuer, and mobile subscriber identity number, than those belonging to Staffeldt or any of the defendants in this case. In fact, it referred to an entirely different criminal investigation in a different state in a different part of the country. Most important, the memorandum of authorization did not, directly or indirectly, refer to Staffeldt or his co-defendants in any regard.

Despite this flagrant and obvious error on the face of the wiretap application — we have held the attachment to be a part of the application[1] — the government argues that the evi-

---

[1] In *United States v. Callum*, 410 F.3d 571 (9th Cir. 2005), we explained that when a DOJ memorandum of authorization for a wiretap request is presented to a judge reviewing a wiretap application, that memorandum is part of the application. *Id.* at 576.

dence should not be excluded because, it contends, the error was a minor one not warranting suppression. We disagree. Unlike the cases relied on by the government in which the facial insufficiency related only to the identity of the authorizing official in the Justice Department, the facial insufficiency here is far more substantial: The facial insufficiency in this case makes it impossible for a judge to conclude from the face of the application that it had been authorized by the Justice Department, let alone by a duly empowered Justice Department official.

The general statement in the application regarding authorization refers the judge to a copy of the attached memorandum of authorization — a memorandum that does not apply to Staffeldt at all. Because a wiretap application that has not been authorized by the DOJ cannot support the issuance of a wiretap order, the failure of the application to show that it had been authorized cannot be considered minor. Accordingly, we hold the wiretap evidence challenged here must, because of the facially insufficient application, be suppressed, and we therefore affirm the district court.

## I. Background

### A. *The Application, Authorization, and Approval Process for Wiretaps*

Title III, as amended (codified at 18 U.S.C. §§ 2510-2522), contains strict controls governing the issuance of wiretap warrants, and the use of wiretaps, in criminal investigations. Because Congress recognized the grave threat to privacy that wiretaps pose, it spelled out "in elaborate and generally restrictive detail" the process by which wiretaps may be applied for and authorized. *United States v. King*, 478 F.2d 494, 498 (9th Cir. 1973). It did so in order to insure that wiretaps are limited "to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527-28 (1974). The

statutory scheme created by Congress relies on a uniquely rigorous bifurcated system of authorization involving review and approval by both the executive and judicial branches. The Supreme Court has explained that this system evinces Congress's "clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *Id.* at 515.

Under Title III's statutory scheme, when a law enforcement officer wishes to employ a wiretap, he must first seek permission to file an application with the court from a senior Justice Department official. 18 U.S.C. § 2516(1). Either the Attorney General or a duly empowered high-ranking subordinate must review and approve the request before the application may be filed. The application must provide the court with certain information, including the facts and circumstances the applicant relies on to justify his belief that a wiretap order should be issued; a statement as to whether other investigative procedures have failed, or why they are likely to fail if tried, or why they are too dangerous to be attempted; and it must show that a properly designated Justice Department official, who must be identified, authorized the request for the particular wiretap sought in the application. *Id.* § 2518(1). The judge who receives the application must review it to determine whether it complies with the statutory requirements. If it does and he concludes that a wiretap is warranted, he issues an order approving it. The order, like the application, must contain certain facts relevant to the authorizing of the application. *Id.* § 2518(4).

Wiretap evidence obtained in violation of the Act may not be used at a criminal trial or in certain other proceedings. 18 U.S.C. § 2515. Title III provides that three types of statutory violations merit suppression. Such violations occur when: (1) "the communication was unlawfully intercepted"; (2) the application or approval order "under which it was intercepted

is insufficient on its face";[2] or (3) "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). Here, the "insufficient on its face" ground is at issue.

## B.   The Staffeldt Wiretap

A wiretap application was requested in connection with a Drug Enforcement Agency investigation of Jeremy Staffeldt and others. In September 2003, Assistant United States Attorney Keith Vercauteren ("AUSA Vercauteren") filed with the Justice Department an Application for Interception of Wire Communications for cellular telephones used by Staffeldt in Arizona. According to the sworn affidavit of Jeffrey Spalding, the Deputy Chief of the Electronic Surveillance Unit in the Office of Enforcement Operations ("OEO") at the Justice Department, he received the application on September 23, 2003. Spalding states that on October 3, 2003, "he recommended that an appropriately designated official of the Criminal Division authorize [AUSA Vercauteren] to apply for a court order authorizing the interception of wire communications over the Arizona phones." Spalding explains that he forwarded a copy of the proposed authorization letter to Assistant Attorney General Christopher Wray for the appropriate signature, and, on the same day, he also forwarded Wray a similar proposed authorization letter, pertaining to an unrelated proposed telephone wiretap in Pittsburgh, Pennsylvania. On October 3, according to Spalding's affidavit, Deputy Assistant Attorney General John Malcolm faxed the OEO a signed copy of the Title III authorization letter pertaining to the Pittsburgh tap. At the same time, Spalding contends, Malcolm faxed that office the signed authorization letter pertaining to Staffeldt's phones. Spalding states that he then called AUSA Vercauteren and left him a voicemail message to

---

[2]*See Callum*, 410 F.3d at 576 n.5 (9th Cir. 2005) (explaining that the facial insufficiency factor applies to both applications and approval orders).

inform him that his request to seek a court order to wiretap Staffeldt's phones had been authorized. Following this call, Spalding asserts that he "inadvertently" faxed the authorization letter regarding the unrelated Pittsburgh wiretap to AUSA Vercauteren in Arizona and the authorization letter regarding the Staffeldt wiretap to an AUSA in Pittsburgh.

AUSA Vercauteren filed an Application for Interceptions of Wire Communication for Staffeldt's phones with the District Court for the District of Arizona on October 9, 2003. The application stated in general terms that a duly designated Justice Department official had authorized the request for the wiretap sought in the application. To substantiate this assertion, the application then stated that attached was a copy of a "Memorandum of Authorization approving this application" as well as a copy of the Attorney General's order of special designation. The memorandum of authorization that was attached, however, pertained to the unrelated Pittsburgh phone interception; it identified targets, and a phone number, address, cell phone issuer, and mobile subscriber identity number completely different from those identified in the body of the application. It did not mention or refer to Staffeldt in any respect, and in no way supported the assertion that the application to wiretap his phones was authorized. The district judge nevertheless signed an order authorizing the wiretap on Staffeldt's phones. The order states that the application to tap Staffeldt's phones was "authorized by a duly designated official of the Criminal Division, United States Department of Justice, to intercept wire communications to and from the target telephone numbers [of Staffeldt's two phones]." The judge attached to the order the memorandum of authorization for the unrelated wiretap of the Pittsburgh phone, which, of course, failed entirely to show that any authorization had been obtained with respect to Staffeldt's phones.

Because under Title III a wiretap warrant must be renewed after thirty days,[3] the government filed an Application for

---

[3]18 U.S.C. § 2518(5).

Continued Interception of Wire Communications on November 13, 2003. This application alleged probable cause for the same offenses as before. The factual basis for the continued wiretap consisted in part of information that had been obtained from the initial tap. Shortly after the government filed the second application, it discovered that the original application had the Pittsburgh memorandum of authorization attached to it, and that it had failed to provide an authorization relating to Staffeldt. It then filed a motion to amend the original order and substitute a different memorandum of authorization — the memorandum that authorized the filing of an application to wiretap Staffeldt, the copy of which had mistakenly been sent to Pittsburgh. The district judge then signed an order amending the original order authorizing the initial wiretap and granting the application for the continued wiretap.

A federal grand jury indicted Staffeldt on charges of Conspiracy to Possess with the Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 846(a)(1) and 841(b)(1)(B)(vii), and Possession with the Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Staffeldt filed a motion to suppress the intercepted conversations and the resulting fruits of the two wiretaps; the motion was based in part on the failure of the application to conform to the statutory requirements, and in particular on the facial insufficiency of the application.[4] The district court granted the motion and the government appealed.

## II.   Analysis

### A.   *The Staffeldt Wiretap Application is Facially Insufficient*

[1] Three cases, two from the Supreme Court and one from

---

[4]Staffeldt's five co-defendants joined in this motion. After this appeal was filed, two of those co-defendants made motions to withdraw joinder, which we granted.

our court, explain when an application is insufficient on its face.[5] These cases establish that a wiretap application is facially sufficient if, on the basis of the information that appears on its face, it could reasonably be believed that it meets all the statutory requirements, including the requirement that a duly empowered Justice Department official authorize the application for the particular wiretap being sought, and thus that the wiretap is warranted. If not, the application or order is deemed facially insufficient.

In the first case, *United States v. Giordano*, 416 U.S. 505 (1974), the application and the order challenged as facially insufficient identified "Assistant Attorney General Will Wilson" as the official who authorized the submission of the application, "pursuant to special designation by the Attorney General." *Id*. at 508-09. It was later discovered, however, that it was not Mr. Wilson who authorized the wiretap request, but rather the Executive Assistant to the Attorney General. *Id*. at 509-10. The Court held that this error did not render the order facially insufficient, as the application clearly identified an official, Assistant Attorney General Wilson, who, under the statute, could qualify as an authorizing official. As a result, although the identification was incorrect, a judge examining the application and order on its face could reasonably believe that a duly empowered DOJ official had in fact authorized the wiretap request. Because it appeared from the face of the order that the statutory requirements had been satisfied, the Court held that the order was sufficient on its face and, therefore, was not suppressible on the ground of facial insufficiency. *Id*. at 525 n.14.

Similarly, in *Chavez v. United States*, 416 U.S. 562 (1974), the Court considered a wiretap application and order that also erroneously identified Assistant Attorney General Wilson as

---

[5]Although some of these cases address the facial sufficiency of approval orders in part, the facial insufficiency analysis applicable to such orders applies equally to applications. *See Callum*, 416 F.3d at 576 n.4.

the Justice Department official who had authorized the wire-tap request. This time, the request had actually been authorized by the Attorney General. *Id*. at 565. The Court held that this error also did not make the order insufficient on its face because it "clearly identified 'on its face' Assistant Attorney General Wilson as the person who authorized the application to be made. Under § 2516(1), he properly could give such approval had he been specially designated to do so by the Attorney General, as the order recited." *Id*. at 574. Accordingly, the Court did not suppress the wiretap evidence on the ground of facial insufficiency. *Id*.

In *United States v. Swann*, 526 F.2d 147 (9th Cir. 1975), the relevant case on facial insufficiency decided by our court, two of the challenged wiretaps had been approved by the district judge on the basis of applications that identified "Acting Assistant Attorney General Henry E. Peterson" as the authorizing Justice Department official. The identification was incorrect. It was the Attorney General who had in fact authorized the applications. *Id*. at 148. In *Swann*, unlike in *Giordano* and *Chavez*, however, Peterson, the official identified as having authorized the applications, was not and could not have been empowered to do so under Title III. Because the Act precluded an Acting Assistant Attorney General from authorizing wiretap requests, we reasoned that a judge reviewing an application that identified an officer with that title as the authorizing official could not reasonably believe from the face of the document that it complied with the statutory requirements regarding authorization. Accordingly, we held that the applications were facially insufficient. *Id*. at 149.

**[2]** Under the standard established by *Giordano*, *Chavez*, and *Swann*, there can be no question that the application here was facially insufficient. It would be impossible for a reasonable jurist to conclude from the face of the application, including the attached memorandum of authorization,[6] that the

---

[6]*See supra* note 1.

request for the Staffeldt wiretap had been authorized by the Justice Department. The application itself states that the attachment is a copy of the applicable authorization. The attachment, however, does not authorize anything with respect to Staffeldt or even mention him. Instead, it authorizes the filing of an application for a wiretap of an entirely different person in a different part of the country. As a result, a reading of the application would preclude a determination that all the statutory requirements for approving a wiretap of Staffeldt's telephones had been met.

[3] It strains the imagination to believe that a judge who properly reviewed the application, including the memorandum of authorization attached as part of that document, could have concluded *from the face of the application* that a duly empowered Justice Department official had authorized the request to wiretap Staffeldt. The authorization memorandum is clearly irrelevant to the Staffeldt application and offers no indication whatsoever that any official at the Justice Department had approved the filing of the Staffeldt wiretap application. Indeed, the government concedes that had the district judge been aware of the contents of the application including the attached exhibits, he would not have been able to approve the wiretap.[7] Because the application for the wiretap filed in

---

[7]The following exchange took place at oral argument:

Court: Is what your telling us is if the assistant [U.S. Attorney] had appeared before Judge Carroll and Judge Carroll . . . asked the assistant did the appropriate official from the Department of Justice approve the application and the assistant said yes sir, and Judge Carroll said, how do I know that, and the assistant said just look at the attachment to our application, your honor, and he turns it over and reads it, and he says wait a minute, this attachment you are referring to talks about a case in Pittsburgh, it doesn't have anything to do with this case, that the assistant would have been on good strong legal grounds to say, well you can ignore that, we did in fact get the permission of the Department of Justice, I probably attached the wrong sheet to the application, so don't worry your honor, you can go ahead and authorize the wiretap.

the district court fails to show that authorization was obtained to file an application for a wiretap of Staffeldt's phones, we hold that it is facially insufficient.

## B. The Facial Insufficiency of the Staffeldt Wiretap Application Requires Suppression

[4] Not every facial insufficiency in an application requires a court to suppress the wiretap evidence. When the facial insufficiency is so "minor . . . that [it] does not substantially impair the accomplishment of Congress's purpose," suppression is not required. *Swann*, 526 F.2d at 149; *see also Callum*, 410 F.3d at 579. As explained in *United States v. Acon*, which we relied upon in *Swann*, whether a facial insufficiency is minor relates to the "distinction[s] in the kinds of information which must be supplied to the approving judge." 513 F.2d 513, 517 (3d Cir. 1975) (cited in *Swann*, 526 F.2d at 149). Suppression is merited only when the facially insufficient information is "likely to affect the judge's determination that a wiretap is or is not warranted." *Id*.

---

Government: No, I wouldn't put it quite that way. . . . What would have happened at that point if Judge Carroll had seen it was the wrong letter is that we would have stopped, gone back to the office, called and got the right fax . . . .

Court: And there would have been no interception of communications?

Government: There wouldn't have been interception of communications.

Court: And yet the interception of communications went on for more than a month?

Government: Yes, your honor.

Court: And the government concedes that valuable information was gained during that period.

Government: It does concede that valuable information was gained during that period and that there were . . . 30 days of interception.

**[5]** In the instant case, the facially insufficient portion of the application to place a wiretap on Staffeldt's phones plainly relates to information critical to a judge's determination whether the issuance of the application is warranted. The application is facially insufficient in that it fails to show that it was authorized at all by the Justice Department: All that a judge can tell from reviewing it is that an application to wiretap another person was approved. The Supreme Court has held that Justice Department authorization is a "critical precondition" to the approval of a wiretap application.[8] Thus, the absence of an authorization memorandum regarding Staffeldt clearly is "likely to affect the judge's determination that a wiretap is or is not warranted." The facial insufficiency in the Staffeldt wiretap application, therefore, cannot be considered minor. Accordingly, the evidence obtained by means of the wiretap must be suppressed.

*Swann* and *Callum*, two cases relied upon by the government, are not to the contrary. In *Swann*, the applications were insufficient on their face with respect only to the *identity* of the Justice Department official who authorized the applications; however, the applications did not, on their face, prevent the reviewing judge from determining whether authorization for the particular wiretaps requested had been obtained at all. As a result, the applications in *Swann* did not suffer from a facial insufficiency comparable to that of the application here. As the obtaining of authorization for the particular wiretap is a significantly more important factor in the judge's determination whether the wiretap is warranted than the identity of the authorizing official, *Swann* does not suggest that we should reverse the district court's judgment in this case.

*Callum*, 410 F.3d 571 (9th Cir. 2005), is similarly distinguishable from the present case. The facial insufficiency at issue there also related to the *identity* of the authorizing official, not to the fact of authorization itself. In *Callum*, we reaf-

---

[8]*See Giordano*, 416 U.S. at 515-16.

firmed our holding in *Swann* that when the facial insufficiency relates exclusively to the identity of the authorizing official, that insufficiency is minor and does not require suppression. *Id.* at 576.[9]

## III.   Conclusion

The application for the wiretap of Staffeldt's telephones is clearly insufficient on its face. The facial insufficiency relates not to a minor issue unlikely to affect a reviewing judge's determination whether issuance of a wiretap is warranted, but rather to a factor essential to the issuance of a warrant — that the application for the wiretap has been authorized. We hold that the facial insufficiency here requires the suppression of the evidence obtained as a result of the initial Staffeldt wiretap, which was approved on the basis of the insufficient application. As the factual showing for the subsequent wiretap of Staffeldt's phones relied on information obtained from the first wiretap, all evidence gained from that wiretap must also be suppressed.[10] We remand for further proceedings consistent with this opinion.

   **AFFIRMED.**

---

[9]The government also relies on *Chavez*. As we explained *supra*, in *Chavez* the Court held that the application for the wiretap there at issue *was not facially insufficient*. 416 U.S. at 572-73. The remainder of the Court's discussion concerns arguments that the wiretap evidence must be suppressed on a different suppression ground, namely that the communication was "unlawfully intercepted." *Id.* at 574-80. Accordingly, *Chavez* has little relevance of the question here — whether the facial insufficiency of the wiretap application is minor enough so as to not require suppression.

[10]Because we affirm the district court on this ground, we do not reach any of Staffeldt's other claims for relief.